**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| T.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHE, INC.,<br><br>Defendant. | Case No. 3:25-cv-09349-WHO<br><br>Judge: Hon. William H. Orrick<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: February 4, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 2 |

# TABLE OF CONTENTS


**PAGE(S)**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER CIPA CLAIM ..... 2

II. PLAINTIFF HAS ARTICLE III STANDING ..... 5

A. Plaintiff's Non-Anonymized, Private Adult Product Purchases Are Personal Information Protected By The Right To Privacy ..... 7

B. Plaintiff Was Injured Because Defendant's Conduct Deprived Her Of The Right To Control The Dissemination Of Her Personal Information ..... 9

C. Plaintiff's Adult Purchases Constitute The "Contents" Of Her Communications With The Website ..... 10

III. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ..... 11

A. Legal Standard ..... 11

B. Defendant Purposefully Directed Its Conduct at California ..... 11

C. Plaintiff's Claims Arise Out of Defendant's California-Directed Conduct ..... 12

D. Exercising Jurisdiction Is Reasonable ..... 13

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Ambriz v. Google, LLC*, 2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......... 9

*Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016) .......... 14

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) .......... 17, 18, 19

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 13, 16

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 ( 9th Cir. 2020) .......... 11, 15

*Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) .......... 12

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 10

*Doe v. Eating Recovery Center, LLC* 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 10

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 10

*Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064 (N.D. Cal. 2023) .......... 17

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 9, 10

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .......... 16

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 9

*Frasco v. Flo Health, Inc.*, --- F.R.D. ---, 2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 13, 14, 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... 11

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 16

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 9, 10

*Heerde v. Learfield Communications LLC*,
741 F.Supp.3d 849, 854 (C.D. Cal. 2024) ........ 13

*Heiting v. FKA Distributing Co.*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) ........ 13

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 16

*In re Facebook*,
956 F.3d 596 (9th Cir. 2020) ........ 12, 15, 16

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) ........ 13

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. 2024) ........ 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 10, 13, 16

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 8, 9

*Jones v. Ford Motor Co.*,
85 F4th 570 (9th Cir. 2023) ........ 12

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ........ 18

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 13

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 9

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 14

*Petris v. Sportsman's Warehouse, Inc.*,
736 F.Supp.3d 260 (W.D. Pa. June 3, 2024) ........ 11

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025) ........ 14

*Rack Room Shoes, Inc.*,
2025 WL 1085169 .......... 10, 11, 16

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 7, 15

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) .......... 12

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) .......... 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 11, 13

*St. Aubin v. Carbon Health Techs., Inc*,
2024 WL 4369675 .......... 9

*Stanley v Georgia*,
394 U.S. 557, 565(1969) .......... 13

*Tate v. Vitas Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 9

*Tattered Cover, Inc. v. City of Thornton*,
44 P.3d 1044 (Colo. 2002) .......... 13

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978) .......... 8

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 11, 13

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) .......... 7, 15

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751, 758 .......... 8

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 9

**STATUTES**

Cal. Civ. Proc. Code § 410.10 .......... 17

Cal. Pen. Code §§ 630 .......... 7

## INTRODUCTION

When the California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"), it recognized "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Further, as recognized by the California Supreme Court, the intent of CIPA is to protect the right of Californians to control who does and does not get to learn the content of their communications. *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). When consumers communicate with a business, they expect to only communicate with that company. Consumers *do not* expect that company to aid, agree with, employ, and conspire with completely separate third parties in secretly listening to, receiving, and accessed those communications. Plaintiff's Complaint ("Compl.") ¶¶ 7, 12. This is especially true when communicating with a sex toy company that purports to "take[] your personal privacy extremely seriously," that purports to have been "founded to help protect your privacy," and claims it has "gone to court on multiple occasions to defend that right."[1]

But that is exactly what PHE, Inc. ("Defendant") has done through its website, www.adameve.com (the "Website"). When Plaintiff purchased sex toys on the Website, her communications were read, learned, recorded, and analyzed by *completely separate companies*: Attentive, Google and Heap (the "Third Parties"). *See* Compl. ¶¶ 14, 17, 63, 70-72, 74-76, 85-88. These companies had no business learning the contents of Plaintiff's conversations. *See id.* ¶ 18. Yet, this is the exact result intended by Defendant. *Id.* ¶ 106. Defendant made Attentive, Google, and Heap "unseen auditor[s]" to Plaintiff's private communications, thereby depriving Plaintiff of her "right to control the nature and extent of the firsthand dissemination of [her] statements." *Ribas*, 38 Cal. 3d at 361. This is an injury long recognized at "both the common law and the literal understandings of privacy." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).

[1] *See* https://www.adameve.com/t-privacy.aspx (last visited January 15, 2026).

Faced with these allegations, Defendant resorts to legal and factual arguments that have been rejected by California state and federal courts alike. This Court should conclude no differently and deny Defendant's motion to dismiss ("MTD") in full.

## ARGUMENT[2]

### I. PLAINTIFF HAS PLEADED SUFFICIENT FACTS IN SUPPORT OF HER CIPA CLAIM

CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978)." Plaintiff alleges that the Third Parties violated the second and third clauses of CIPA § 631(a) by "reading" or "learning the contents" of Plaintiff's communications "in transit" (the second clause) and using that information for their own purposes (the third clause). *See* Compl. ¶¶ 68-88. And Plaintiff alleges Defendant violated the fourth clause of CIPA § 631(a) by "aid[ing], agree[ing] with, employ[ing]" or otherwise enabling the Third Parties' aforementioned CIPA violations. Compl. ¶ 105.

Plaintiff also adequately pleads that the Third Parties are eavesdroppers rather than recorders. Under *Valenzuela*, "the question is whether the third party has the <u>capability</u> to use its record of the interaction for [another] purpose. An eavesdropper has that capability. A tape-recorder (absent an operator) does not." 674 F.Supp.3d at 758 (emphasis in original; internal quotations omitted). Importantly, and contrary to Defendant's assertions that the third parties' capabilities must be exercised, MTD at 10, the "capability" approach does not require that the SaaS provider actually use the data for another purpose in the instant action, only that the SaaS provider can do so. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (SaaS provider was a third party where "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case").

Here, Attentive "captures 'behavioral data,'" "analyzes behaviors," "provide retailers with a 'treasure trove of insights about [their] customers' shopping habits," and "offer retailers 'a comprehensive customer profile.'" Compl. ¶¶ 28-30. Google, through Google Analytics, can "package[]," process[]," "store[]," and "provide marketing and analytics services". Compl. ¶¶ 43-

[2] Plaintiff does not oppose Defendant's request to provide her full name in the case caption.

45. Heap has the capability to "provide[] analysis through segments, dashboards, charts and playbooks." Compl. ¶ 57. These functions extend beyond the ordinary "secondhand repetition" function of a tape recorder. MTD at 10; *see Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also, e.g.*, *Javier*, 649 F. Supp. 3d at 900 (SaaS provider was a third party where "Javier pleads that ActiveProspect monitors, analyzes, and stores information about visits to Assurance's websites"); *Tate v. Vitas Healthcare Corp.*, 762 F. Supp. 3d 949, 955 (E.D. Cal. 2025) (same where "Invoca's software effectively listens in on user calls, independently analyzes that data, and the company reserves the capability to then use that data for its own purposes") (cleaned up); *Ambriz v. Google, LLC*, 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025) (same); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (same where defendant may use and store content to develop and improve its services); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951-52 (N.D. Cal. 2024).

Defendant also argues that "Plaintiff fails to allege that any of the Third Parties read and intercepted the communications while in transit." MTD at 10. But "[w]hile a plaintiff must do more than 'merely restate[ ] the pleading requirement of real time interception,' the standard is not overly burdensome." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (citing *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024)). "[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Id.* (citing *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024); *see also* St. Aubin, 2024 WL 4369675, at *7 (explaining that "the key to the interception analysis is whether the plaintiff alleges that transmission was simultaneous")). Moreover, "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024). "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the

custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Plaintiff thus meets her burden here.

Defendant's reliance on *Doe v. Eating Recovery Center, LLC* does not change this result. In *Doe*, the Court reached its conclusion on a motion for summary judgment before a full factual record. 2025 WL 2971090, at *7 (N.D. Cal. Oct. 17, 2025); *see also Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (same). At the pleading stage, Plaintiff has done more than enough to support her allegations that the Third Parties intercepted Plaintiff's communications while "in transit." *See* Compl. ¶¶ 50, 77. Plaintiff even highlights the network traffic between Defendant and the Third Parties, which illustrate the interceptions at issue here. *Id.* Figs. 6-8. These illustrations show that the Third Parties are able to learn the meanings of the communications while they are in transit. *Id.* At the pleading stage, nothing more is required. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961-62 (N.D. Cal. 2023); *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4.

Additionally, Defendant's argument that the Complaint does not allege facts establishing that Defendant was aware of the Third Parties' conduct contradicts the pleadings. "Defendant aids third parties, including but not necessarily limited to Heap, Attentive, and Google with monitoring and tracking consumers' personal information as they navigate Defendant's Website." Compl. ¶¶ 63-67. Plaintiff alleges that Defendant "integrated into its Website code from Attentive—including but not limited to the Attentive Tag—for the purpose of "capturing behavioral data" and linking it to personally identifiable information." *Id.* ¶ 68. Plaintiff alleges that Defendant integrated Google Analytics in a similar way. *Id.* ¶¶ 73-80. Plaintiff also alleges that Defendant "assisted Heap with intercepting consumer information, including when it concerned information related to consumer's private sensitive information." *Id.* ¶ 85. Plaintiff also includes images of transmissions where Defendant provides the Third Parties with the purchases made by website users. *Id.* ¶¶ 70, 74, 86. Plaintiff thus alleges the requisite intent because Defendant's service "is designed for the purpose of recording and analyzing communications between its customers … and consumers or other entities." *Gladstone.*, 739 F. Supp. 3d at 860; *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d

1244, 1260 (N.D. Cal. 2024) (finding intent where "TikTok designed and provided its Pixel to sites like Favor *in order* to intercept the information that [plaintiff] alleges TikTok received") (emphasis in original). This is especially true when Defendant gave consumers express representations of privacy, when it knew it was disclosing private information regarding their purchases to unknown third parties without consent, as well as the legal protections afforded to such information. Compl. Figs. 9-10; ¶¶ 19-22. Defendant's argument that it was unaware "that the Third Parties' conduct would violate CIPA" fails for the same reasons. *Id*; *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5.

## II. PLAINTIFF HAS ARTICLE III STANDING

In order to establish Article III standing, a plaintiff must plead facts that plausibly demonstrate three things: (1) he has suffered a concrete, particularized, and actual (*i.e.*, not conjectural or hypothetical) injury; (2) the injury is traceable to the challenged action of the defendant; and (3) it is likely (*i.e.*, not merely speculative), that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Srvcs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000). The harm suffered by the plaintiff must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F.Supp.3d 260, 270-71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words…[i]t is not necessary…for a plaintiff asserting such a claim to plead or establish *the elements* of a traditional cause of action, but rather, only that an analogous harm exists."). As the Supreme Court has recognized, "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Ninth Circuit is in accord, acknowledging that, even before *TransUnion*, "[the harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another." *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1117-19 ( 9th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)) (internal citations

omitted). Because those privacy harms are "well-ensconced in the fabric of American law," intangible harms bearing a close relationship to them "qualify as concrete." *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155–159 (3d Cir. 2022) (internal quotations omitted).

As the Ninth Circuit and every other circuit court has held, the interception of web browsing information in violation of a privacy statute (including CIPA) is sufficient for Article III standing. *See, e.g.*, *In re Facebook*, 956 F.3d 596, 599 (9th Cir. 2020) (finding Article III standing where "Facebook uses plug-ins to track users' browsing histories when they visit third-party websites, and then compiles these browsing histories into personal profiles which are sold to advertisers to generate revenue"); *Jones v. Ford Motor Co.*, 85 F4th 570, 574 (9th Cir. 2023) ("A statute that codifies a common law privacy right gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Salazar v. National Basketball Association*, 118 F.4th 533, 542 (2d Cir. 2024) (finding standing where plaintiff alleged his data "was disclosed as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel") (cleaned up); *Salazar v. Paramount Global*, 133 F.4th 642, 648 (6th Cir. 2025) (finding "Salazar's alleged injury—the disclosure of his 247Sports.com private video-viewing history to Facebook," sufficient to confer Article III standing). The case at hand involves an even more severe privacy violation because it concerns not only web browsing activity but actual purchases which are defined as private information under the California Consumer Privacy Act. CCPA § 1798.140, subd. (v)(1).

Against this spate of authority, Defendant contends that Plaintiff lacks Article III Standing because she does not allege that allowing Third Parties to intercept information about her use of the Website concretely injured her. *See* MTD at 16. As the Third Circuit aptly put it, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion … that federal courts are powerless to provide a remedy when an internet company

surreptitiously collects private data [] is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).[3]

### A. Plaintiff's Non-Anonymized, Private Adult Product Purchases Are Personal Information Protected By The Right To Privacy

Defendant argues that Plaintiff lacks standing because she "does not … indicate precisely what information or data about Plaintiff was purportedly collected by [Defendant]." MTD at 15. That is wrong.

Courts have routinely held that even Internet browsing information such as "specific web pages viewed, search terms entered, and purchase behavior" constitutes "personal information." *Walt Disney Co.*, 701 F. Supp. 3d at 949; *Heiting v. FKA Distributing Co.*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025) (finding interception of "device and browser information, geographic information, referral tracking, and URL tracking" sufficed for Article III standing) (cleaned up); *Brown v. Google LLC,* 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views.").

The information here is even more private than browsing information as it divulges the adult products that Plaintiff selected and purchased from the Website. Compl. ¶¶ 12, 15, 66, 70-71, 74-75, 78-80, 88. As far as mere browsing is concerned, the District Court for the Central District of California and others have found similar information to be "sensitive and confidential" because it "reveal[s] the specific content Plaintiffs consumed." *Heerde*, 741 F. Supp. 3d at 864 (discussing video-viewing information); *see also, e.g.*, *Stanley*, 394 U.S. at 565 (recognizing the right of the individual "to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home"); *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044,

---

[3] Most of these decisions post-date *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (and all post-date *Spokeo v. Robins*, 578 U.S. 330 (2016)), but even those that pre-date it remain good law. "*TransUnion* had nothing to say about the surreptitious appropriation of private ... data," and "TransUnion did not affect a sea change in the law of standing." *Frasco v. Flo Health, Inc.*, --- F.R.D. ---, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1138 (E.D. Cal. 2021) ("*TransUnion* involved a fundamentally different type of alleged injury than the one here ... which the Supreme Court analogized to the common law tort of defamation.").

1053 (Colo. 2002) ("Search warrants ... demanding information about the reading history of customers, intrude upon the First Amendment rights of customers and bookstores because compelled disclosure of book-buying records threatens to destroy the anonymity upon which many customers depend."); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 599 (S.D.N.Y. 2016) ("Michigan is not alone in concluding that disclosure to third parties of content that individuals choose to consume raises privacy concerns...").

*Popa v. Microsoft Corp.*, 2025 WL 2448824 (9th Cir. Aug. 26, 2025), does not change this analysis. *Popa* involved anonymous information that was used for technical troubleshooting being disclosed without consent. *Id.* Thus, while the plaintiff in *Popa* claimed her privacy was invaded, she could not tie that invasion to any specific privacy harm because the information was anonymous. *Id.* This is not analogous to the present facts. Plaintiff has specifically alleged that her personal information was disclosed to the Third Parties via surreptitiously intercepted communications with Defendant. *See* Compl. ¶¶ 7, 14, 17, 64. Crucially here, Plaintiff alleges that this information was tied directly to her in that she was able to be identified. *See id.* ¶¶ 4, 13, 17, 68, 78-79, 84. Such eavesdropping and wiretapping have consistently been found to be a privacy harm by California and Federal courts. *See Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up). Consequently, "obtaining user information … is the 'concrete harm,'" as the user "has lost control over her private information because of another's intentional actions." *Frasco*, *supra*, 2025 WL 1433825, at *12.

Such information goes beyond "basic contact information" under *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023). Here, Defendant aided and employed the Third Parties in intercepting the contents of Plaintiff's communication, the intended message conveyed by her communication, not simply record information. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517-18 (C.D. Cal. 2021). Plaintiff also alleges that the Third Parties analyzed this information to build profiles on customers, provide marketing and analytics services, and improve ad targeting capabilities, among other things, to assist Defendant. Compl. ¶¶ 30-32, 44-45, 56. Furthermore,

Defendant conspired with the Third Parties to eavesdrop and wiretap Plaintiff's interactions with the website without Plaintiff's knowledge or consent. *Id.* ¶¶ 4, 14, 16, 63. Defendant's aiding and employing the Third Parties to wiretap and eavesdrop on Plaintiff therefore caused Plaintiff an injury sufficient to meet the standing threshold in California courts.

This is on top of the California Legislature recognizing and codifying the privacy of this information. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) ("[L]egislatures may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.") (cleaned up); s*ee* CCPA § 1798.140, subd. (v)(1). Plaintiff had a reasonable expectation that her information would remain private because Defendant was required under the CCPA to notify her "at or before the point of collection" if it intended to collect such information. *See* Compl. ¶¶ 19-22.

### B. Plaintiff Was Injured Because Defendant's Conduct Deprived Her Of The Right To Control The Dissemination Of Her Personal Information

Defendant contends Plaintiff cannot allege a concrete injury because "Plaintiff has failed to allege a concrete harm in support of Article III standing." MTD at 10. Defendant misunderstands the harm that CIPA protects against.

"The common law secures to each individual the right of determining ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 n.15 (1989). To that end, the "right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook*, 956 F.3d at 598 (cleaned up). It is this historical privacy right that CIPA was codified to protect. *See id.*; *see also Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (in describing purpose of CIPA § 631, noting the "simultaneous dissemination" of a conversation "to an unannounced second auditor ... denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements"). And it is this privacy right that Defendant deprived Plaintiff of by causing her private reading information to be intercepted by the Third Parties without consent. *Frasco*, 2025 WL 1433825, at *12 ("[T]he loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a

personal diary in 1916 or obtaining user information in a healthcare app in 2016."); *James*, 701 F. Supp. 3d at 949. Indeed, "privacy torts do not always require additional consequences to be actionable ... [in] the tort of intrusion upon seclusion ... the intrusion itself makes the defendant liable." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (cleaned up).

Thus, Plaintiff's injury here is no mere technical violation. Instead, CIPA "codif[ies] a substantive right to privacy [the right to control the dissemination of personal information], the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook*, 956 F.3d at 598 (cleaned up); *see also Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5 (N.D. Cal. Aug. 29, 2025); *Brown*, 685 F. Supp. 3d at 925.

### C. Plaintiff's Adult Purchases Constitute The "Contents" Of Her Communications With The Website

Defendant argues that "it is unclear based upon Plaintiff's Complaint whether the information or data that [Defendant] allegedly allowed Third Parties to intercept is akin to basic contact information, like an IP address, or highly sensitive information like medical records." MTD at 16. That ignores the pleadings.

"[A] basic URL that directs to the homepage of a website is often found not to be content, while detailed URLs reflecting users' queries can be content." *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (cleaned up). Here, Plaintiff alleges Defendant enabled Attentive, Google, and Heap to intercept detailed URLs that disclosed the specific sex toys that the user searched for, viewed, and purchased. Compl. ¶¶ 70-71, 74-77, 85-88. Such information qualifies as the "contents" of a communication. *See, e.g.*, *James*, 701 F.Supp.3d at 956 (finding contents were intercepted where "Plaintiffs have alleged that Oracle intercepted, e.g., information about the webpages they viewed and searches they conducted"]; *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("The parties agree that Plaintiffs' allegations that the Carrier IQ Software intercepted ... URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act."); *In re Meta Pixel Tax Filing Cases*, 724 F.Supp.3d 987, 1004 (N.D. Cal. 2024) (finding "contents" were intercepted where "[t]he financial information that was transmitted to Meta from the tax filing websites included ... information affirmatively provided by the website

user to the website"); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) ("[A] URL disclosing a search term or similar communication made by the user could constitute a communication under the statute.") (cleaned up).

## III. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Defendant's contention that this Court lacks personal jurisdiction is foreclosed by both the allegations of the Complaint and binding Ninth Circuit precedent. Plaintiff has plausibly alleged facts establishing specific personal jurisdiction under California's long-arm statute and the Due Process Clause, and Defendant's attempt to characterize its conduct as "nationwide" or "passive" is precisely the argument rejected by the Ninth Circuit in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025).

### A. Legal Standard

California's long-arm statute authorizes personal jurisdiction to the full extent permitted by federal due process. Cal. Civ. Proc. Code § 410.10; *Briskin*, 135 F.4th at 755. Due process is satisfied where a defendant has sufficient "minimum contacts" with the forum such that exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

Courts evaluate specific personal jurisdiction under a three-part test: (1) the defendant purposefully directed its activities at the forum or purposefully availed itself of the privilege of conducting activities there; (2) the claim arises out of or relates to the defendant's forum-related conduct; and (3) the exercise of jurisdiction is reasonable. *Id.* at 750–51. At the pleading stage, Plaintiff need only make a prima facie showing of jurisdictional facts, with conflicts resolved in Plaintiff's favor.

### B. Defendant Purposefully Directed Its Conduct at California

Plaintiff plausibly alleges that Defendant intentionally engaged in conduct expressly aimed at California, knowing the resulting harm would be suffered by California residents. That is sufficient under the Ninth Circuit's purposeful-direction "effects test." *Briskin*, 135 F.4th at 758–61. Here, Defendant owns and operates an interactive e-commerce website through which it knowingly sells products to California residents and ships those products into California on a routine basis. Complaint ¶¶ 1–2, 9–12. In the course of those transactions, Defendant embedded

third-party tracking and interception code that captured communications revealing the most intimate details of California consumers' sexual lives and purchases, conduct Defendant allegedly undertook without consent and for its own commercial benefit. *Id.* ¶¶ 14–18.

As *Briskin* makes clear, an interactive platform "expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous—even if that platform cultivates a nationwide audience for commercial gain." 135 F.4th at 758. Defendant's alleged conduct here mirrors the conduct deemed jurisdictionally sufficient in *Briskin*: installing tracking technology during online purchases, knowing the consumer is located in California, and monetizing the resulting data. *Id.* at 759.

Defendant's argument that it is merely a North Carolina company operating a nationwide website does not defeat jurisdiction. The Ninth Circuit expressly rejected that framing, holding that purposeful direction exists where the defendant knowingly exploits California consumers and California commerce through its own technological and business choices. *Id.* at 757–760; *see also Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *6–7 (C.D. Cal. Dec. 4, 2025). Defendant's arguments regarding VPN usage similarly lack merit, as it collects shipping information for all products it sells and ships through its e-commerce platform.

### C. Plaintiff's Claims Arise Out of Defendant's California-Directed Conduct

Plaintiff's claims arise directly from Defendant's forum-related activities. Plaintiff is a California resident who used Defendant's website from California to purchase products shipped into California, and whose communications were allegedly intercepted in California as part of that transaction. Compl. ¶¶ 11–12, 14–15. As *Briskin* explains, the "arises out of or relates to" prong is satisfied where the alleged injuries are "the kind of injury that would 'tend to be caused by'" the defendant's forum contacts. 135 F.4th at 760. Defendant's alleged CIPA violations occurred precisely because Defendant chose to transact with California consumers and to deploy interception technology during those California-based interactions. There is thus a direct nexus between Defendant's California contacts and Plaintiff's claims.

### D. Exercising Jurisdiction Is Reasonable

Finally, Defendant cannot carry its burden of showing that jurisdiction would be unreasonable. California has a strong interest in adjudicating claims under the California Invasion of Privacy Act brought by California residents whose confidential communications were intercepted within the state. *Briskin*, 135 F.4th at 761–62. Plaintiff's interest in obtaining convenient and effective relief weighs heavily in favor of jurisdiction, and Defendant, who ships products, collects revenue, and conducts substantial business in California, cannot plausibly claim undue burden litigating here. Moreover, Defendant's argument that this lawsuit concerns only the website and not its products misses the mark. Plaintiff ordered the products through the website at issue in California and to California. Indeed, as in *Briskin*, all relevant reasonableness factors favor jurisdiction, and Defendant's contrary arguments amount to nothing more than disagreement with settled Ninth Circuit law. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss. To the extent the Court grants the motion to dismiss, Plaintiff respectfully requests leave to amend.

Dated: January 16, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Attorney for Plaintiff*

**PROOF OF SERVICE**

I am a resident of the State of Florida, over thes age of eighteen years, and not a party to the within action. My business address is Bursor & Fisher, P.A., 701 Brickell Ave, Suite 2100, Miami, FL 33131. On January 16, 2026, I served the document(s):

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

☒ by e-mail transmission on that date. These documents were transmitted via e-mail to the following e-mail addresses as set forth below.

**LEECH TISHMAN NELSON HARDIMAN, INC.**
Ivan M. Posey (SBN 196386)
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (424) 738-4400
Facsimile: (424) 738-5080
E-mail: *iposey@leechtishman.com*

*Attorneys for Defendant*
*PHE, Inc.*

I declare under penalty of perjury under the laws of the State of Florida that the above is true and correct, executed on January 16, 2026, at Miami, Florida.

/s/ Diego Rivera
Diego Rivera

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| T.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHE, INC.,<br><br>Defendant. | Case No. 3:25-cv-09349-WHO<br><br>Judge: Hon. William H. Orrick<br><br>**[PROPOSED] ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>*(Filed concurrently with the Opposition)*<br><br>Complaint Filed: November 9, 2025<br>Trial Date: Not Set |

**[PROPOSED] ORDER**

After full consideration of Defendant PHE Inc.'s ("Defendant") Motion to Dismiss (the "Motion"), including all filings supporting and opposing the Motion, and oral argument if necessary, the Court orders as follows:

Defendant's Motion to Dismiss Plaintiff's Complaint is DENIED.

**IT IS SO ORDERED.**

Dated: ______________________

______________________
Hon. William H. Orrick